BANK OF THE STATE OF ARKANSAS *against* JAMES CLARK, AND OTHERS.

APPEAL *from Arkansas Circuit Court.*

In debt upon a bond it is sufficient and proper to aver that by his writing obligatory, &c. the defendant " *promised to pay.*"

In a suit by the State Bank on a note or bond executed to that instititution, it is unnecessary to aver that by the non-payment of the note or bond the defendants became liable to pay interest at the rate of ten per centum per annum ; or to negative in the breach the payment of such interest.

The court is bound judicially to know what the legal interest is, and to give judgment accordingly.

The plaintiff instituted an action of debt against the defendants in the Circuit Court of Arkansas county, and declared, in the usual form, in action of debt. " For that whereas the said defendants heretofore, to wit: on the third day of June, A. D. 1839, at the county of Arkansas, by their writing obligatory, signed by their respective styles, of James Clark, John Thompson, Jr., Robert S. Connell and Benjamin Thompson, sealed with their seals, now to the court here shewn, bearing date the day and year aforesaid, *promised* that they the said James Clark as principal, and the said John Thompson, Jr., Robert S. Connell and Benjamin Thompson, as securities, jointly and severally would pay, four months after the date thereof, to the said plaintiff, or to her order, the sum of thirteen hundred dollars, above demanded, negotiable and payable at the branch of the Bank of the State of Arkansas at Arkansas, without defalcation, for value received; whereby, and by force of the Statute in such cases made and provided, an action hath accrued to the said plaintiff to demand and have of and from the said defendants the said sum above demanded, with interest thereon from the time the same became due and payable, according to the tenor and effect of said writing obligatory, until paid, at the rate of ten per cent. per annum." The queritur and breach were technically formal; and the payment of debt demanded, or any part thereof, or of the interest thereon, accruing as aforesaid, or any part thereof, was expressly and appropriately negatived in the

latter. To this declaration the defendants demurred, without expressing in their demurrer, specially, any defect or imperfection whatever; and the plaintiff joined in the demurrer; which, upon argument and consideration was sustained, the declaration adjudged insufficient, and a final judgment given against the plaintiff. From which she appealed.

PIKE, for plaintiff in error :

We shall not occupy the time of the court by argument upon a question that is settled by its own adjudication. No causes of demurrer being assigned, and the declaration showing a sufficient cause of action, it was error to sustain the demurrer, and the judgment must be reversed.

An inspection of the declaration would induce the court to wonder on what ground the court below decided. We have been informed that two reasons were assigned for the decision: First—that the declaration states that by the writing obligatory sued on, the defendants "*promised.*" Second—that the declaration states the liability by statute to pay interest at ten per centum per annum.

The first ground seems to be a misapplication of the common principle that a covenant or bond may be declared on according to its legal effect—a principle which does not apply, and if it did, still does not prevent declaring according to the words used in the instrument.

It is true that in the forms laid down in the books of precedents, the statement of the obligation generally is in the words "acknowledged himself to be held and firmly bound," or "became bound," &c., because many bonds are couched in that language; but these words are a mere form, and are not the "legal import" of the obligation. A bond or obligation is defined to be "a deed, whereby the obligor or person bound *obliges* himself, his heirs, executors and administrators, to pay a certain sum of money to another at a day appointed." 1 *Jacobs* 350. Certainly to *promise* to pay, and to *oblige* one's self to pay are the same thing. Again it is said to be called a specialty, because the debt is therein particularly specified in wri-

ting, and the party's seal *acknowledges* the debt or duty, and confirms the contract. *Id.* 351.

The rule as to stating a deed is clearly laid down by *Wilson*, J. in *Whiteman vs. King*, 2 *H.*, *Bla.* 11. He says, "I take it to be a clear rule in pleading, that a party may state a deed, and leave the court to determine what is the operation of it. If the legal operation of the deed is misstated, the plea is bad; *but if the deed is only stated without its legal operation it is good.*"

It certainly cannot be contended that the legal operation of this bond *is* misstated. Its legal operation is simply that of a single bond for money, and that legal operation appears from a promise to pay, as well as from an acknowledgment of indebtedness. The promise to pay, is the major, and includes the indebtedness, which is the minor. The rule laid down in *H. Blackstone* has been ever since recognized as correct; and, as stated by MARCY, J. in *Scott vs. Leiber*, 2 *Wend.* 479, "It is a general rule in declaring, that contracts must be set forth *in the words in which they were made*, or according to their legal effect. 1 *Ch. Pl.* 299.

As to the other point, a special statute gives ten per centum interest on all notes due the Bank, not paid at maturity. This being a liability not created by the *letter* of the contract, it was necessarily averred. If it was not necessary to aver it, it is mere surplusage.

And the court having suggested a desire to hear discussed the validity of the law giving interest at the rate of ten per centum per annum on notes and bonds executed to the State Bank, after due, the following further argument was filed by

PIKE, for plaintiff in error:

The question is presented whether the provision in the act of March 3, 1838, authorizing the State Bank to recover interest at the rate of ten per centum per annum on all notes, &c., not paid when due, is void, as contrary to the provision in the charter which fixes the highest rate of interest to be taken by the bank *in advance at eight per cent.*

If it be void, it can only be so because it is such a modification of

the charter as impairs the obligation of a contract.   The same power which enacted the charter could undoubtedly modify and change it in any respect, were it not for the provision in the National Constitution prohibiting the States from passing any law impairing the obligation of contracts.

A *contract* is defined to be a compact between two or more persons.   *Fletcher vs. Peck*, 6 *Cranch*, 136.   It has also been defined an agreement to do, or not to do, a particular thing.   *Sturges vs. Crown-inshield*, 4 *Wheaton*, 197.

The obligation of every contract will consist of that right or power over one's will or actions, which he, by his contract, confers on another.   3 *Story Com. on Const.* 243.

Contracts and grants made by the Legislature of a State are within the clause, and when made become irrevocable, and cannot be constitutionally impaired.   *Fletcher vs. Peck, ub. sup.; New-Jersey vs. Wilson*, 7 *Cranch*, 164; *Terrett vs. Taylor*, 9 *Cranch*, 52; *Town of Pawlet vs. Clark*, 9 *Cranch*, 535.

Upon the subject of charters it is laid down that the contracts spoken of in the Constitution were those which respected property, or some other object of value, *and which conferred rights capable of being asserted in a court of justice.*   *Dartmouth College vs. Woodward*, 4 *Wheat.* 518, 629.

A charter is declared to be a contract, because, " it is a grant of powers, rights, and privileges; and it usually gives a capacity to take and to hold property."   A charter granted to *private persons, for private purposes,* is said to be within the terms and the reason of the prohibition, because it confers rights and privileges, upon the faith of which it is accepted.   It imparts obligation and duties on their part, which they are not at liberty to disregard; and it implies a contract on the part of the Legislature that the rights and privileges so granted shall be enjoyed.   3 *Story, Com. on Const.* 259.

Again it is laid down that " as to public corporations which exist only for public purposes, the Legislature may change, modify, enlarge, or restrain them."   That " if a charter be a mere grant of political power, if it create a civil institution, to be employed in the administration of the government, or, if the funds be public property alone,

and the government alone be interested in the management of them, the Legislative power over such charter is not restrained by the Constitution, but remains unlimited.   3 *Story, Com. on Const.* 260, 261.

These principles are indubitably correct, for they are sustained by the highest authority in the country.   Let us inquire then whether there is any contract implied or contained in the charter of the State Bank?   Not so, for it is not an incorporation of private persons, but a mere law regulating and giving certain powers to the treasury of the State.   There are no contracting parties—and no powers, rights, or privileges are by it conferred upon any person or set of persons.   The funds of the bank are the funds of the State, the profits of the bank are the profits of the State, and the debtors of the bank are the debtors of the State.

There being no contracting parties, there is no contract; and of course the obligation of no contract is impaired by the law of 1838, or any law modifying or extending the charter.

Furthermore, as this charter confers no rights and privileges, so also it imposes no obligations; and in one word, the *State* and the *People* of the State generally are the only parties concerned, and private rights are in no manner guarantied or affected by the charter.

In *Allen vs. McKeen*, 1 *Sumn.* 297, Mr. Justice STORY said, " public corporations are such only as are founded by the Government for public purposes, where the *whole interests* belong to the Government," reiterating the language of the Supreme Court in the case of *Dartmouth College vs. Woodward.*   In that celebrated case the very point here at issue was decided.   The Supreme Court said, " for instance, a bank created by the Government for its own use, whose stock is exclusively owned by the Government, is, in the strictest sense, a *public corporation.*"

Moreover, to extend or increase the rate of interest to be taken by a bank, even if a *private* corporation, would not be impairing the obligation of the contract.   The contract in such case is between the Government and the corporators.   They are the parties.   Certainly to increase the rate of interest which they might take would not be impairing the obligation of the contract.   The contract, for example, in the charter in this case, supposing the bank to be a private corpo-

ration, is, that she may take interest as high as eight per cent., and that the Legislature will never, by diminishing the rate of interest, deprive her of her profits.    To increase the rate of interest is to add and grant a *new* privilege, instead of taking away one already granted.

We conceive that this question can present no difficulty; and that the act of March 3d, 1838, is in full force as the law regulating contracts made with the bank—regulating certainly all such contracts made subsequent to its passage.

RINGO, *Chief Justice*, delivered the opinion of the Court:

The only question presented by the record is whether the declaration is sufficient in law; or was the demurrer thereto rightly sustained? The declaration is in point of form strictly and technically right, and we are at a loss to conceive the ground upon which it was adjudged insufficient.    The pleader, it is true, in describing the obligation of the defendants, employed language somewhat different from that usually found in the ancient forms and precedents, but the language used is literally the language of the contract, and imports an an obligation as effective in law as that usually adopted in the precedents, and if it could ever have been objectionable, as matter of form, it must be conceded that our statute has effectually cured the objection by declaring that " no person shall be prejudiced by neglect of the ancient forms and terms in pleading; so that the matter fully appear in the process, declaration, petition, statement, or other pleading;" and requiring the parties to express in every demurrer the defect or imperfection of the pleading demurred to; while they are prohibited, by the same statute, from setting out therein any defect or imperfection "that would be cause of special demurrer at common law;" and the court is expressly required to amend every such defect or other imperfection in the pleading " other than those which the party demurring shall express in his demurrer."    *Rev. St. Ark.*, *Ch.* 116, *S.* 59, 60, 61, *p.* 627–8.    The contract, as set forth in the declaration, contains no stipulation for the payment of interest, and therefore, as the interest thereon is prescribed and given by a general law, and can be regarded only as a legal consequence of the failure to pay the

Bank of the State of Arkansas *against* James Clark, and others.

debt or discharge the obligation at maturity, or on the day when it became due, and payable according to law, or the express agreement of the parties, a special averment in relation thereto is unnecessary, and must be regarded as surplusage: because the facts which entitle the party to interest being shewn, the court is bound to know, judicially, what the legal interest is, and pronounce judgment for it if the plaintiff obtains judgment for the debt demanded.